**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Elizabeth TUCKER,
Defendant-Appellant.**

No. 74–3735.

United States Court of Appeals,
Fifth Circuit.

April 16, 1975.

---

3. *Cf.* Knetsch v. United States, 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960).

E. Glenn Tucker, John L. Laskey, Naples, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., David F. McIntosh, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before TUTTLE, COLEMAN and SIMPSON, Circuit Judges.

PER CURIAM:

The appellant, Mrs. Elizabeth Tucker, an elderly widow, for a number of years prior to September 1973, was the owner of "Angelus", a forty-eight foot, 1933 model Matthews, gas screw cruiser, which she customarily kept moored at the City Dock, Naples, Florida. This was nearby and convenient to her place of business, and she lived aboard the vessel. Naples adopted a city ordinance the effect of which was to prohibit use of vessels moored at the City Dock as living quarters. The appellant's modest finances would not permit her to maintain both the yacht and separate living quarters as well. She listed the yacht for sale with a local yacht brokerage, which on October 9, 1973 communicated an offer from Thomas DelGaudio to purchase the vessel for $9,000, with a deposit of $1000 earnest money being tendered. Mrs. Tucker accepted the offer and the sale was consummated, except for necessary paper work as to licensing and registration, on October 10 by the payment of an additional $4,000. The remaining purchase price of $4,000 was covered by the delivery to the seller of a promissory note calling for payments of $2,000 each on November 15, 1973 and December 15, 1973. The broker prepared the note, a "Marine Purchasing Agreement and Deposit Receipt", and a "Closing Statement". The Purchasing Agreement restricted use of the vessel to a radius of 50 miles from Naples, Florida, a not unusual provision for the seller's protection where a security interest is retained.

Mrs. Tucker removed all her effects from the vessel and delivered possession of it, with its keys to DelGaudio on October 10. At that time the documentation papers were in transit for annual renewal between Mrs. Tucker and the United States Coast Guard. Subsequent to October 10, 1973 the record is undisputed that she was never again aboard the vessel and never exercised any dominion over it. DelGaudio had exclusive control of "Angelus" at all times thereafter.

Four weeks later, at 3:45 p.m. on November 7, 1973, the "Angelus" exploded and sank alongside the fuel pumps at the Naples City Dock. Both Mrs. Tucker and DelGaudio received notice from the United States on November 10, 1973 that the "Angelus" was sunk at Naples, Florida, and were requested by the notice to mark and remove the vessel. Neither Mrs. Tucker nor DelGaudio marked the vessel. The City of Naples about that date marked the vessel for a time ending in early December 1973. The vessel was not thereafter marked nor removed up to the date of the trial below, March 14, 1974. The appellant refused to sign a permit for the City to remove the vessel on the ground that such permission might be construed as an admission of ownership.

Mrs. Tucker and DelGaudio were indicted on April 4, 1974 on two counts charging violation of Title 33, U.S.C., Sections 409 and 411: Count I alleged that they, as owners of the "Angelus" had knowledge that the vessel had exploded and sunk in a navigable channel and failed to commence and diligently prosecute removal of the vessel; and Count II alleged that the two defendants, as owners of the yacht "Angelus" had knowledge that the vessel had exploded and sunk in a navigable channel and failed to mark the vessel and to maintain such marks until her removal or abandonment. Joint jury trial was held after the denial of Mrs. Tucker's

motion for severance, with the appellant being found guilty of both counts and DelGaudio being found not guilty as to both counts. Mrs. Tucker testified at length in her own behalf. DelGaudio did not take the stand but testimony was introduced showing that the vessel was in the custody of and being operated by a man who had been seen with and associated with DelGaudio on numerous prior occasions. The defendant was sentenced to thirty days confinement (suspended) and six months probation as to each count to run concurrently, one condition of probation being that she move the "Angelus" from the Naples harbor within thirty days of the imposition of sentence. This condition was complied with.

After the district court denied timely motion for judgment n. o. v. and for a new trial, this appeal timely followed. Mrs. Tucker presents several issues for our consideration on appeal: (a) whether the statute on its face authorized her prosecution; (b) whether the trial court erred when it denied her motion for judgment of acquittal and for judgment n. o. v.; (c) whether it was error to deny her motion for severance, and (d) whether the trial court erroneously refused certain jury instructions requested by the defendant Tucker.

We find it necessary to consider only the second ground of appeal, which raises the sufficiency of the evidence to support the verdict. Since Title 33, U.S.C., Section 409, is directed against failure *of an owner* to mark and remove a sunken vessel, the indictment accordingly necessarily charged the appellant as an owner, and it was essential to the government's case to prove that she was either the owner or a co-owner, of the vessel when it sank. The failure to prove the defendant-appellant's ownership was fatal to the government's case.[1] The point was preserved for appellate review by the trial court's denial of appellant's motions for judgment of acquittal at the close of the government's case, and at the close of all the evidence, and also by the post-trial denial of her motion for judgment n. o. v.

The judgment appealed from is reversed with directions to dismiss the indictment.

Reversed.

1. The jury's verdict inexplicably was reached despite the adequate definition of ownership given them by the court as part of its general charge:

> In considering ownership, you may consider first in whose name was the vessel documented; second, who had the right to possession and enjoyment of the vessel; three, who had the right to restrict the vessel's movements; and four, you may consider that ownership need not be all in one person, but may be divided.
>
> By the term "owner" is meant the one in whom is vested the dominion or title of the property. The one who has the right to enjoy and do with the property as he or she pleases, so far as the law permits, unless he or she is prevented by agreement which restrains that right.

> The term can mean one who has dominion or control over a thing, the title of which is in another. It may also include a person who has possession, care and control of property.
>
> The term "owner" however, is a general one and its meaning is to be gathered from the subject matter to which it is to be applied.

One may speculate that perhaps the jury had the impression that it was required to convict one defendant or the other: either Mrs. Tucker or Mr. DelGaudio. Analysis of this possibility would be appropriate to a discussion of the third issue raised on appeal, the refusal of the trial court to sever the trial of Mrs. Tucker. As the text indicates, we do not consider the severance issue.